Good afternoon, Illinois Appellate Court, 1st District Court is now in session. The Honorable Justice Aurelia Buczynski presiding. Case number 24-0748, People v. Joseph Kaszuba. I think it's Joshua. Joshua, I'm sorry. Kaszuba. Joshua Kaszuba. Okay, good afternoon, everyone. I'm Justice Aurelia Buczynski and I'm joined today by my colleagues, Justice Michael Hyman and Justice Celia Gammarath. Our normal procedure is to just give both sides a starting 7 to 10 minutes. Start with your best argument and work your way down. We try not to interrupt with questions too much in the beginning, and of course, the appellant has the opportunity to reserve some time for rebuttal. So with that, we will let you introduce yourselves. Good morning, Your Honors. Jonathan Krieger on behalf of Joshua Kaszuba. Good afternoon, Your Honors and Counsel. Assistant State's Attorney Whitney Bond on behalf of the people of the state of Illinois. Okay, Mr. Krieger. Thank you. If I could reserve 5 minutes for rebuttal. By law, Post-Conviction Counsel has a duty to amend a pro se petition to adequately present petitioner's claims. In this case, Post-Conviction Counsel failed in this duty. This afternoon, I wanted to discuss 2 amendments that reasonable Post-Conviction Counsel would have made to shore up the claims in the pro se filings. Both of the amendments are apparent from the record and related to the claims in the pro se petition. Initially, the Miranda claim. My claim was convicted in part based on a confession. We've read the briefs and gone over the record. And why isn't this omission with regard to the Miranda? Why couldn't we say that's strategic? Well, there was no strategic reason to allow a confession and courts have recognized that confessions are some of the most damning evidence against the defendant. In this case, trial counsel didn't think that there was a reason to allow it in and counsel correctly move to suppress it. Unfortunately, the motion to suppress was not successful, but defense counsel clearly saw a reason to get it excluded as any reasonable defense counsel would. But unfortunately, as he indicated, the grounds that were specified in the motion to suppress, which were that my client was intoxicated when he gave the statement, were not successful. Now, in his pro se petition, my client alleged that trial counsel was ineffective for not corroborating the claims, for not introducing toxicology evidence that would support the involuntariness claim. At the second stage, post-conviction counsel amended the petition and added an affidavit. And in that affidavit, my client alleged that he invoked his right to counsel 10 times over the course of the. We know that. So why isn't that strategic that that was not brought up by counsel? There would be no reason to bring up if the. It wasn't brought up, right? We're here because it should have been brought up. So the question is, the others, the state is saying, you know, maybe there's some other reasons here that it wasn't brought up. I don't. There was no reason to admit this. This statement, my client's statement, was a confession to felony murder. At the very least, it was a confession to armed robbery. So there's no reason to allow it in. And I don't think the state has given a reason that counsel would want to let it in now or would not challenge its admission. Now, counsel could have raised both of them, could have argued that he was intoxicated and also argued that he invoked Miranda. Those things were not mutually exclusive. But in our case, post-conviction counsel failed to adequately present the claim. Specifically, counsel did not add the Miranda allegation to the ineffective assistance claim in the petition itself. Now, the affidavit showed that counsel properly consulted with the client as was required by Rule 651C and standards of reasonable assistance, but counsel failed to use what she learned from this to her advantage in amending the petition. How do we know that they didn't find it frivolous or there was something else there that, for whatever reason, she didn't want to raise? Well, if she found it frivolous, I'm not sure why it would have been included in the affidavit. That post-conviction counsel, there was an affidavit with the pro se petition that counsel obviously had no control over, but by the time counsel filed the amended petition, counsel could have excluded it. I'm not sure why. I mean, counsel's failure to take those allegations out, if counsel had made a reasonable decision to exclude that, counsel would have taken those allegations out because those allegations do support the claim just in a different way, a different variation of the claim. Okay, so you're saying trial counsel did raise this at the trial in a motion to suppress. This is now the second post-conviction petition that we're dealing with. Is that right? Amended petition. Amended petition. So, and you're saying that post-conviction counsel can't have it both ways. They can't have it in the affidavit and not in the petition itself. They've got to make a choice. Yes, I think that's right. If the claim is a viable claim, obviously, if there's something, an allegation in an affidavit that is far-fetched, that has no support in the law, that wouldn't be required to be included. But once counsel is aware of an issue, it needs to be presented properly. And that's the standard under Rule 651C, that a claim needs to be adequately presented, looking at the filing as a whole. There wasn't an adequate presentation in this case. And in fact, including the Miranda affirmance in the petition itself would have saved the claim. Post-conviction counsel admitted, although counsel included the ineffective assistance claim for failure to cooperate, the intoxication counsel admitted that she had looked for the reports, the reports from CIRMAC, and that there was no toxicology, that there was nothing there that supported the idea that my client was intoxicated. So although she raised the claim in the petition, she admitted that it didn't have a basis. And the Miranda, the affidavit, the allegations regarding to Miranda, that would have saved that claim, basically. So it's reasonable assistance not to raise it. Now, the key things here is that it was evident from the record, and that it was related to the claim. We're not saying it needs to be entirely, counsel needs to raise entirely new claims. The claim in the prostate petition was ineffective assistance of trial counsel in litigating the motion to suppress. It's the same argument that these allegations go towards. And it was evident from the record. Trial counsel, having read the record, obviously having prepared, attached the affidavit to her amended petition, would know about these allegations. And any reasonable trial attorney hearing that their client had invoked the right to counsel and to silence 10 times over the course of the interrogation would know that that was a Miranda violation. It's the only way to adequately raise the claim would have been to included the Miranda allegations and ineffective assistance claim. The failure to make that amendment was unreasonable. And the case should be remanded on those grounds. You said that you had two issues. What's the second one? Thank you, Your Honor. The other allegation regarding the other claimants regarding proportionate penalties, it was clear from the pleadings that my client wants to challenge the 25-year firearm add-on. In the prostate petition, he did challenge it, but he raised it as a one act, one crime or lesser included. And post-conviction counsel recognized that he wanted to challenge it and changed the legal basis to one of double enhancement. But the authorities cited this court's decision in People v. Harris found that a sentence for a 19-year-old violated the proportionate penalties clause. And on appeal from that case, the Illinois Supreme Court recognized the possibility of claims for young but not juvenile adults and found that they should be raised in a post-conviction petition. That was, I mean, the case was about the double, about enhancements. And it appears that the counsel may have made a mistake in raising that case or inciting that case. I didn't, apparently, how do we know the counsel even read the case? Because there was a disagreement between, it was two to one decision, descending say this is a legislative issue. And so it wasn't, it's more dicta than anything else. And so I don't, I don't understand how you could say that counsel should have been able to raise the proportion. That wasn't anything involved in the issue that was raised. You're right. Double enhancement was not raised in Harris. The paragraph that was cited, paragraph 69, says that it shocked the conscience uses the proportionate penalties test. Right. I know, but it wasn't discussed. It seems to be a mistake or an error, I guess, in citing that case for the propositions that it was cited for. You know, attorneys are, I'm sorry. It may have been the wrong paragraph. Attorneys are officers of the court. We assume if I cite any decision in front of your honors, I read the entire case. And the paragraph that was cited here was the paragraph that, that had, that suggested that there was a viable way to challenge that. It wasn't double enhancement. It wasn't lesser included or one act one crime, but it was proportionate penalties. Why would the council have to raise it? It wasn't raised by her client. Well, that doesn't have to do that. So, in the Jennings and the Jones case that we cited, the appellate court found that if post-conviction counsel does need to raise a claim if it goes to the substance of the claim in the pro se petition, and also if it doesn't require combing through the record. In this case, it wouldn't require coming through the record. Counsel for reviewing the pro se allegations would have read the sentencing, would have watched the video and seen all of the evidence that my client was a very immature 21 year old. Counsel would have read that my client was bullied by the codefendant in this case that he had. Isn't that coming through the record? Yes, Your Honor, that is the record. Right, but you're saying if it doesn't require you to come through the record that counsel judge should have known this to make this claim. Right. So, counsel to comply with 651C and reasonable assistance, counsel would have read the, for instance, the PSI, the pre-sentence investigation report as part of the claim about toxicology. If you saw that sort of claim in effective assistance for not corroborating, you would look in the pre-sentence report to see if there was any evidence of a drug addiction, for instance. If you were PC counsel and got a petition that raised double enhancement, you'd be alert to look at the sentencing parts of the record. You would be, certainly for all of the claims involving trial error, you would be watching the video where my client showed he was very immature. He had no idea of the consequences. But he was 21 years old. He wasn't a juvenile. He was 21 years old, Your Honor, but there's no age cap on proportionate penalties. In that case, what case are you citing for that preposition? In the, just a moment. In the Trillian Williams case, 2024, it was a 22-year-old. Well, 2024, that's one of my points. None of that case in 2020. This is all done before 2024. Sure. Can't predict the future. Of course not. In People v. Thompson, the 2015 case, the trial court was faced with an emerging adult claim that was raised for the first time on appeal. And the argument there by the defendant was that insights from science, you know, similar to the cases that led to Miller v. should also apply to emerging adults, which in that case was the defendant defined as an 18 to a 21-year-old. And the Illinois Supreme Court said that argument that these developments in psychology and brain development, how they apply to an 18 to 21-year-old, you know, to the extent that they have attributes of a minor, that's something that should be handled by the trial court initially. And so in that case, there was no, there was certainly no camp. In the House decision, which for a while was the key decision, the appellate court House decision 2015, they cited, this court cited an article about why 21-year-olds should be tried in family court. And that's not the argument that we're making, but the key insight, which is that when someone turns 18 years old, that the attributes of youth don't magically disappear. That's something that was in the Supreme Court v. Simmons. Didn't the court make this more plain in Hillard, which was a 2023 decision, where they said there's no categorical age cutoff? That was 2023. But that's 2023. Again, counsel would not have been able to predict that that was coming down the pipe. But at the time, the argument was, and it's still the argument, which is that it doesn't change, that turning 18 doesn't make you magically fully grown at all. The brain science that was being cited said that a person's brain doesn't fully develop until they were age 25. So there was no cap. There was no case at the time that the amended petition was filed. Now, I would say Hillard announced what the law already was, but there wasn't an Illinois Supreme Court case before then saying 21-year-olds don't count. OK, so you're saying that just even relying at that time on Thompson would have been enough if this attorney, this post-conviction counsel, had looked at the video and realized that this guy is really, he's a 21-year-old with a younger man's brain. And because of Thompson, that's enough to get us to proportionate penalties, even though all these other cases have come after counsel. So he couldn't have known about the other cases, but he did know about Thompson and that that's enough to open the door for this. And he didn't do it. And that was wrong. That's what you're saying. That's right. The overall claim of ineffective assistance of trial counsel. If I remember correctly, the question for deficient performance is what the law was at the time. And the question for prejudice is what the law is at the time that it's being decided. And in both of those cases, there's no there's no cap. Counsel would be aware of the argument that this brain science that had that had found given protection to so many juveniles. There was an argument that all should be extended to two emerging adults, such as my client, who's 21 years old. So today we're at 2025, almost 2026. Wouldn't that claim be deemed frivolous today? No, Your Honor. Based on the Williams case, it's expressed the most recent 2024 Supreme Court case expressed some skepticism about one for a 24 year old, but nonetheless addressed it. And as Justice Hyman alluded to in the case, the court said that there was no age limit for proportionate penalties claims. So although the Illinois Supreme Court has, I think, limited the application to emerging adults procedurally, for instance, in terms of whether you can raise it on direct appeal, whether you can raise it for the first time on appeal, how it's analyzed in the context of successive petition. That doesn't affect this case, this case, which is being raised in an original petition, which is what the trial court, which is what the Supreme Court has asked for to raise it in the initial postconviction petition to raise in front of the trial courts first, which that's that's our argument. And as with the Miranda claim, there was no need to scour the record. The allegations were related to the challenge to the add on in the pro se petition. If we agree with you, should, who appoints the new counsel? Should there be a different attorney appointed in this case? Same attorney, how would you suggest that be handled? We didn't ask for a new attorney. If I recall correctly, the attorney that made the amendment was no longer practicing law, but it would make sense to assign it to a different attorney or to give my client the opportunity to hire a private counsel if his family is able to do that. Unless your honors have any other questions. We would ask this court to reverse the judgment of the circuit court and remand for further second stage proceedings. Thank you. Thank you, Ms. Bond. Thank you. Good afternoon again, your honors and counsel, Assistant State's Attorney Whitney Bond on behalf of the people. The court's decision below should be affirmed here because post conviction counsel for this defendant did exactly what this court asked of her to do. And in so doing, provided the defendant with adequate representation representation provided for by this act. Post conviction counsel complied with the broader responsibility of providing reasonable assistance under the act and that responsibility was to shape the claims that defendant had already set forth in his petition. Under the Miranda warning, he said 10 times he asked for an attorney and he didn't get it. That's not in the petition. That affidavit. It's in his affidavit. It's attached to the petition. Correct. But as far as what is also in the petition is already an ineffective assistance of counsel claim as it relates to. This is a constitutional claim. It's one of the most important claims in the repertoire, and it has to do with the Miranda warnings, and he wanted an attorney, and he was told he could get one, and they didn't do it. That's his allegations in the affidavit. That's not just simple. So, this is extremely important and that's why we're here and that's why it's been raised. And so, it, it's there. I mean, how could we say that under the law shouldn't that be something that they should be able to to now litigate. Well, what this court was tasked with, or tasked post conviction counsel with doing was to track down the missing exhibit. That was the initial reason why I went back on remand. But back on remand, once counsel read through the record, there could have been several reasons why this record precluded against bringing a Miranda violation. First, there was a suppression hearing, which this defendant testified, and he testified that. This is a different issue. The issue is, was raised first time in the affidavit, correct? With regard to that. Okay. So, it doesn't matter all that other stuff what happened at trial. This is something that came up. It was there. Counsel knew about it, could attach the affidavit, and hasn't been raised appropriately yet. Why shouldn't this constitutional issue then go to a second stage? Because it wasn't in a proper form in terms of what post conviction. What do you mean proper form because it was in the affidavit in that that is in the record. It's in the affidavit filed affidavit. It's right squarely there. Post conviction counsel's duty, though, is to amend the petition, not add a new claim. This was a claim that was made, and it was made in the affidavit. So, the console would have a reasonable opportunity. We should have known that if it's in the affidavit. That's something that should be amended because it's right there squarely in the affidavit. That's why they do that. Right. Well, you're asking somebody who's incarcerated. Probably may or may not have even graduated from high school. Not a lawyer. Right. And they're supposed to practice law. Is that it? No, it's simply, it's simply our position that post conviction counsel did her duty at this stage of the appeal, the stage of the post conviction proceedings. Miss fine, you said, oh, because it's not in the proper form. So, if it's because it's not in the post conviction petition itself that the process wrote while he was in prison, it's not in the proper form, even though it's in his affidavit. So, the 2 are not not part of the same package. Is that they're part of the same package in that 1 is supposed to support the other not contradict what's in the petition. And I think what well, in the proper form, what would the proper form be? According to your calculation, I would suggest that if this is an issue that needs to be raised that there would be another amended post conviction petition that would have to bring all the claims that are fully fleshed out before the court. Well, if you're going to tell me that, then why aren't you just saying that this post conviction counsel wasn't effective because she didn't put it in the position that she was writing. Anyhow, the only thing that we have in this current record was what this court directed post conviction counsel to do. And that was what she did. And that's simply the people's people's position is that she complied with. 651 C, and she found the exhibit that was supposed to be found in order to help with the identification claim. But it's our position that amendments under that post conviction act. Are amendments not adding something completely different and especially considering it's not adding if it's in the petition, it's not adding and the court never said that only come back with this 1 issue. I mean, that's that's what the attorney did. I understand that. Right? That's why we're here. So what you're saying is we could go back another time. And instead, that's why we're here. And if we reverse in this issue, then that is exactly what you're suggesting that then it can be raised. So you agree it should be reversed on the Miranda. I think that what's important to this court and what's important to everybody is that we reach the legal conclusion of the matter. And if this court finds that the affidavit was sufficient enough to raise the new claim, then certainly that's an opportunity to go back and do it the correct way. It's simply our position that based what we have to argue is just what is in the record for us in terms of the people's point of view and not we're not trying to be obtuse or this is what we are presented with. And that's the difficulty of arguing and effective assistance and counsel issues. We're trying to balance all the moving parts of this case. And I obviously come before this court every time. I hope very respectful and prepared. And I can tell you that this is how we read what the rule under the act and how post-conviction counsel did. I appreciate your candor. I appreciate it. And I'm not making any suggestions about you in a briefing. Excellent, excellent job. But let me ask a different question. Compare the Miranda to the proportionate penalties clause. They're not the same. So how do you read that as compared to the Miranda? Well, I see what you're saying on Miranda. If that if it's this court's opinion that the affidavit in and of itself should have made another claim, it's very different than the proportionate penalties one because that's a completely new claim. That's coming out of, you know, it's started as a double enhancement sort of claim and kind of morphed over time. And now, you know, you're able to since the start of this case, which is many, many years ago, the landscape has changed for emerging adults. I mean, it's our position that he was 21 years old at the time that he committed this crime. I understand opposing counsel's points about, you know, you can look at this case through different lenses and see what's this emerging adult sort of claim. You know, our position, it's not. He was 21 when he committed the crime. This wasn't sort of an impetuousness of youth. You know, he met kind of cordially this victim in the gas station and then formulated a plan to effectively stalk him and then and shoot him. I mean, I think you can look at the video in two different lenses. You know, you're looking at it if this is your client versus the state. Is this is this a defendant that's not understanding the gravity of the of the situation because he's immature? Or is this a person who doesn't care about authority and had a long list of of run ins with the law and just it wasn't. You know, that big of a deal at this point, I think the like a proportionate penalties charge or challenge, excuse me, can be brought at any time. I don't think it's reasonable here when his sentence itself didn't shock the moral consciousness of society. I think it was a very fair sentence, 20 years on the murder and 25 for the enhancement. So proportionate penalties claim at this stage and in this second stage petition, it's just adding another claim that doesn't have any support as it relates to this specific defendant. Well, I think when Harris was raised initially in the post conviction petitions filed by Miss Lundahl, we filed a response coming back with sharp because that what she was relying on Harris for the double enhancement and sharp said that because the legislature made clear that its intention to enhance the penalty of a crime, even if a way it might constitute double enhancement and reviewing court won't overrule the legislature. So counsel at that point knew the age of this defendant saw the writing on the wall at that point. And again, to go back to all your justices points that this legal landscape and Miller and its progeny is completely changed a lot of the game. But still the state would stand on the idea that this was not this is a 21 year old committing a heinous crime and was not somebody that counsel would make a proportionate penalties claim about. And so, so if this case were to go back on the issue, for example, yes, would his counsel have the opportunity to raise new claims, perhaps not be obligated to, but have the opportunity to, including a portion of penalties claim. I think that if this court is sending it back for the Miranda issue and under the because there was it wasn't an affidavit, and therefore it should have been. It was raised and should have been amended upon further from there. I think then. It would be difficult to also lump in the proportionate penalties claim with that, because they're 2 very specific issues as justice pointed out, because you're still going to run into the, I mean, the proportionate penalties claim is going to be specific as to this defendant. And, you know, there's just there's a law that says that it's just not necessary. But if Miranda constitutionally needs to be raised in this court, is that that's what they find 2 totally different issues. And also, though, I mean, this court can order a lot. I have just back to the proportionate penalties thing, so the certificate that the post conviction counsel file says, I consulted with my client. I've talked this over with him. I've reviewed the record. I've looked at his pro se petition, so if she talked to this person and communicated with him and and then and saw his affidavit that said, hey, you know. I, I was held for 40 hours. Yeah, you know, at some point, doesn't the whole certificate that she filed become suspect whether or not she actually ever talked to this guy. I think that it's a lot to like, put the on it or put sort of that label on an officer of the court that they're filing a 651 C and signing their names to it. And I mean, I wouldn't go that far. I don't I know a lot of times people are overworked and I will say that as far as 651 C certificates go, I've been in the state attorney's office long enough that my direct appeals like this 1 have become my post conviction petitions. And a lot of them now are mostly post conviction petitions and a lot of those 651 C certificates seem pretty rubber stamped. This 1 struck me as being particularly thorough because she didn't she went beyond the 3 things that the rule requires and then explains that. Yes, she not only looked at the whole record, but she looked at the 05 case in the 08 case in the 18 case and she read this court's orders. And I find it hard to believe that if she's going to put that much effort into 651 C file it with the court sign our name to it that she didn't have correspondence with this defendant. And maybe that correspondence did show her somebody that I mean, we're talking years and years and years later. I mean, obviously, he's going to be mature, more mature just by the nature of time passing. But there might not have been anything there that would strike a proportionate penalties sort of argument that she could make. Again, ineffective assistance of counsel issues are hard because I'm trying to put myself in the mind of somebody I've never met. And I don't really know how their offices work compared to our office. So I can only speculate that, as counsel pointed out, it's fellow officer of the court that she was doing the best that she could. And I would submit that that was a pretty thorough certificate for what that's worth in terms of easing the court's mind that she did what she was supposed to do in terms of this specific issue. I hope that answers your question. Yes, thank you. If there are no further questions, I'm happy to take some more. But the people respectfully request this court affirm the dismissal petitioners post conviction petition. And thank you so much for your time today. Thank you. Mr. Krager. Just at one point in rebuttal to answer Justice Gamrath's question, what happens on remand? This court finds there was no 651C compliance. It would go back for a rule 651C compliance, which means that counsel, probably new counsel, would have to consult with my client, would have to read the record, and would have to make any necessary amendments. And if counsel looked at the length of the sentence, my client's age, the presentence report, the video, and determined that a proportionate penalties claim would be a good claim to raise, then new post conviction counsel would certainly have the ability, indeed, would be required to do so. Would that be true if we, let's say, I'm not suggesting I'm telling you what we're doing. I'm just asking the question. But let's say that we reverse on the Miranda claim, and we affirmed on the proportionate penalties claim. Would what you just said still be true in that a court has decided that that claim did not have to be brought up? Well, if your honors did address the proportionate penalties claim, I think it would depend on how your honors decided the issue. If there was a ruling on the merits, that might have some kind of estoppel effect. But if your honors just found it's not in the petition, then that wouldn't. No, I don't think that that would affect it. We had been decided on the merits. If it wasn't decided on the merits, it would certainly not prevent post conviction, new post conviction counsel and appeal from raising it. No. Mr. I don't have any questions. Any further questions. Any questions? No. Well, in that case, thank you, Mr. We've read the briefs, we've had the record, and we'll take this case under advisement. And with that, this case is done for today, and we will stand adjourned until we hear the next case. Thank you.